The next matter, number 25-1380, Jason Grant et al. versus the Trial Court of the Commonwealth of Massachusetts et al. Today we're going to hear from the appellants, an amicus party, and the appellees. At this time, would counsel for the appellants please introduce themselves on the record to begin. Mark J. Randazza for the appellants. And I understand you've ceded two minutes of your time. I have surrendered two minutes of my time to amici, yes, Your Honor. Okay, thank you. And I'd like to reserve three minutes for rebuttal, if I may. You may. May it please this Honorable Court, the point of departure for any analysis of a speech-based restriction is that all speech is protected. And if the government wants to infringe upon that sacred right, in this case it must meet four conditions. One of them is unusual. We don't usually see this. But a question as to whether the government official engaging in the restriction even has that power or authority. If it does have that power or authority, it must exercise that power and authority consistent with the 14th Amendment. And even then, whatever it does, it must be consistent with the First Amendment, and then that restriction itself must be applied consistent with the First Amendment as well. The restriction before you today meets none of those four conditions. Just as an example, District Attorney Morrissey's opponents in the upcoming election cannot campaign in front of this courthouse at this time. But DA Morrissey has every right to stand in front of that courthouse and give a speech to the international meeting. Are you saying, are you alleging he has done that? I am not alleging he has done that. So you're just interpreting the order as saying it would allow that? I beg your pardon, Your Honor? Are you just interpreting the order as saying it would allow that? Well, the order is vague. The order says that demonstrations are not permitted. However, there have been speeches given to the media out there. I don't know if DA Morrissey himself cannot allege that, but the prosecution has given speeches to the media. Now, what's the difference between a speech by my clients and a speech by the District Attorney? It would be helpful if you could clarify exactly what you're challenging, because we have several stages of this. Are you challenging the order to the extent it would be limited to courthouse property? No, anything on courthouse property we are not touching. So we're talking about the public ways and property that don't belong to the courthouse and the application of the judge's authority to that area? Correct, Judge Kaye. We are making absolutely no requests as far as what's happening inside that building or even on that building's actual property. What about the sidewalks on all four sides of the courthouse? We are challenging that, Judge. In keeping with Judge Kaye, I have the order in front of me. There is the first, it is therefore ordered no individual may demonstrate in any manner, so on and so forth, carrying signs, placards, so on. Then there is the second. It is further ordered that no individuals will be permitted to wear any buttons, so on and so forth. Are you challenging the second? No, Judge Lynch. Anything from it is further ordered. We believe that the trial court judge had the power inside the courthouse, and we have no interest in challenging it. Even though some of that may have some constitutional problems, we have no interest in challenging it. Okay, so let's go back to the first one. So you're challenging any buffer zone on any sidewalk, including the ones that people use to get in and out of the courthouse. I take it there are sidewalks beyond those on the opposite side of the street that are also within the buffer zone? They are. They go beyond that. So are you suggesting that it is the 200 feet that is the problem, that a shorter buffer zone would be acceptable? A shorter buffer zone might be more acceptable, Your Honor. Well, do you have something in mind? I do, Your Honor. If there were a need to do that, first we have to look back at the justification for it. Would you accept the buffer zone in the first order? I would not, Judge Montecalvo, because I believe it, too, was imposed without authority, without due process, and contrary to the First Amendment. So you did say a shorter buffer zone you wouldn't challenge, so what do you have in mind? I would still say that it would be unconstitutional for the judge to reach outside of that building onto property that is not the courthouses. For example, this one reaches out to the lawn of the public library. Now, I'm not saying there is no authority. If somebody is trying to get into that courthouse, somebody is trying to get into this courthouse. Is all the property at issue here public property? Does the record show that, or is there some private property as well? There are private residences, private businesses also inside the buffer zone. I believe there's even a church inside the buffer zone. What does the record show that sort of farmer's market area is? Is that public or private? The farmer's market area, I believe it is a public area. But does the record show that? But I'm not challenging what we can do in that area. I'm challenging what we can do on public sidewalks, which are a traditional public forum. Okay. So, believe me, we do, we've studied the briefs. We understand the arguments. We just have some sort of practical concerns that maybe you could help us with and your co-counsel. All right. The district court says I'm concerned about disruption of the trial. I'm concerned about witness intimidation. I'm concerned about the juror feelings of unsafety and possibly juror intimidation. I'm paraphrasing, but that's basically what this is about. And she says in light of those three concerns, and there's evidentiary support for all of them, I think this is necessary, the 200 feet. The SJC had blessed earlier the 200 feet. I know your caveat. Only there was a gaping hole because there was an area, a fourth area, which the zone didn't cover. So I'm going to extend the 200 feet to that zone as well. You had noticed that the Commonwealth was seeking this. You chose not to come in and say, Your Honor, there are lesser measures that could have been adopted other than what the Commonwealth is proposing. So you now come to us and say the whole buffer zone is unconstitutional. We say to you, if your argument in part is it needs to be more narrowly tailored, how? How? What? We've heard your argument, no buffer zone. But if we're down to narrow tailoring, what should the court have done instead? I think the court should have looked at what was actually in the record, which is there is a declaration from an officer Hartman who says that you could hear people inside the courtroom. You have an affidavit from a John Doe who says we could hear noise. Neither of them said anything about intimidation, anything about jurors being affected by this. Look, I was on the panel first time around, so I know witness intimidation was an issue. The juror affidavit here expresses concern about the jurors' safety, concern about the fact that the jurors get on buses. This isn't the Mowgli courthouse we're talking about. There's no underground garage. There are four entrances to the Denham courthouse. I don't know whether the bus, assuming the jurors are sequestered, pulls up on the sidewalk in front of four different places, depending on what the police feel is the safest place. The jurors are afraid that they're going to be identified. That's what the juror affidavit from the first time around said, and he gave reasons why he was fearful. Then there are issues of witnesses entering this courthouse. It's been a long time since I've been to the Denham courthouse, but it's very old. It's, you know, you open the windows to let the air in. There's, I think, just the courtroom, the big criminal courtroom that they're using. So if you want to talk about narrow tailoring, what is it that you think should have been done? The problem we have is there's no tailoring. If there is this specific evil, I think your opinion in Rideout versus Gardner is instructive. If there was noise before, why wouldn't you think there would be noise again? Well, then why not a limitation that simply says there's a quiet zone around the courthouse? That would work. Now, I don't, I would still have the other problems with it, but we also would not. You do have the other problems. But we would not have challenged that. But we would have the other problems with that order, Judge Lynch. However, we would not be challenging, and we did waive the right to be noisy. So if you have that problem, that is the only problem here that they've identified. And even then, it simply says we could hear it. You can hear birds chirping. You can hear airplanes coming overboard. You can hear motorcycles going by. But if you have a problem with protesters being loud, we also have the ability of the police to use existing law, as you identified in Rideout versus Gardner. If there are adequate measures that the police can use, like 268.13a and b, which make it already illegal to intimidate a witness, to intimidate a juror, to intimidate any member of court staff. So the court had that ability already. The police had that ability already. This only curtails. And what the court found first time around is that ability didn't stop it from happening. And once it happens, then you have concerns about the fair trial. Well, the only thing it did that happened was they said they could hear people inside. Nobody, nobody has even once said in any affidavit or in any statement that anybody in that jury was negatively influenced by it. And there are other ways that a court can govern that. In the Tsarnaev case, Judge Kayate, you found that even all that pretrial publicity that could have affected jurors could be corrected with an instruction to the jurors. We can guard the jurors. Would you be bothered by hearing protesters? The judge could, as in the Crocker case, could move the room to another room. Or even better, between the last trial and this trial, there's also a case that my friend cites from 1915 that says a court can spend money to solve problems in a courthouse. I could buy for $300 soundproofing on Amazon that I could put up in that courtroom in six hours for them. Let me just ask you this, because I take your narrowly tailored argument, and I think I understand it and I'm concerned about it. And then I move to the sort of the sidewalk cases that you've cited. But they all seem a little bit different here in that they involve, you know, ordinances or statutes and not an injunction. Is that a distinction that we should be looking at? I have never seen. I think in all of those regulations, what is really the big distinction you should look at is they all have a mens rea type requirement. Every single one of those restrictions, A, requires you to not just be protesting like in Cox v. Louisiana, but Cox v. Louisiana approved of a 500-foot buffer zone. You would think if you stopped the analysis there that that means 200 feet is just fine. But really that regulation in Cox v. Louisiana was a statute that functioned like 268, 13A and B in the Commonwealth, which really extends that buffer zone to the entire Commonwealth. I do think it makes a difference also that it is an injunction here that nobody had the ability to challenge. When you have a statute, you kind of have due process baked into it. You have elected leaders, you have people you can petition. Here, and to Judge Lynch, to your inquiry, we had no notice and opportunity to be heard. The state does say they had a hearing in open court, but we had no right to be there. In fact, prior protesters in the Spigugas case tried to. No, no, wait a minute. You mean that the Karen Reid defense and the protesters in her support, the fact that the Karen Reid defense had notice of this and the opportunity to say something to the judge about tailoring the order, that means you had no notice and wasn't the motion put on the public record? Well, one, we're conflating Karen Reid, who has different interests than my clients. There are three teams here at best. There may be five or ten teams. But the protesters are keenly interested in what's going on in the case. I assume the Commonwealth's notice was put on the public docket. Judge Lynch, even if my clients were acutely aware and given notice, if my clients had been given notice that this is when the hearing's going to be on this and you may come and speak, that might be a different story. But last time somebody tried to intervene and the government argued against our ability to do so successfully, we have no right to intervene at all. Okay, there's a difference between attending to intervene in a criminal case and showing up to say, Your Honor, as a friend of the court or whatever, we offer these suggestions. I think that's a good idea, but there's no right to an amicus brief. Amici don't have a right. In fact, there are three Amici who tried to enter this very case who were rejected. So if there are options, I mean, we could have also flown a skywriter over. I'm not trying to be flippant. I'm just saying we have no right at all. That's what Section 1983 is about. So you're well over your time, and I do want to be flexible. I know this is an important case, and it's here on very short briefing. But you'll have time in rebuttal. All right, I'll take my seat. Thank you, Your Honor. Thank you, Counsel. At this time, we're going to hear from the Amici party. Please introduce yourself on the record to begin. Good afternoon. May it please the Court. John Latouche, the Amici, Your Honor. I'll just be brief, Your Honor. My time is obviously short. The Amici have intervened in this case not only because we are the first First Amendment Lawyers Association, Foundation for Individual Rights and Expression, and of course the National Press Photographers Association. Not only does this order affect this demonstration, affect members of the public, but also affects journalists. We've had an example that is cited in the appellant's brief. Counsel, there's nothing in the order that says journalists are excluded from the buffer zone unless, of course, they want to join demonstrations. I understand that on its face, Your Honor. However, the phrase is demonstrate in any manner. That broad phrase can be interpreted and has been interpreted thus far to include people who are merely video recording. If I go, for example, a journalist goes to a protest and is wearing a shirt, a T-shirt that says freedom or freedom of the press. That can be interpreted by the enforcers, who in this case are the police and the court officers, to be a demonstration. Again, if we're going to say that this is broad-based, that all demonstrations are banned, then it's going to affect those people. We've already had the example of Mr. McGowan, who's been arrested for merely going there and video recording. I'm sorry, but I don't see how a journalist appearing on the sidewalk in the buffer zone unless there's a gaggle of journalists, whether they have cameras or not, are a demonstration. Unfortunately, the order doesn't clarify that. You have come up with one example. What were the actual charges that were brought? Was it violating the buffer zone or was it something else? The police officers arrest him, there's a video recording of him, for attempting to record. That's journalism. As Glick has pointed out, the public has an absolute right to videotape public officials. Then why not go back to the trial judge and say your order is being misinterpreted? Your Honor, that's the problem with the 200-foot order. The 200-foot order can be interpreted that way. There's no guidepost in it. That's why it's overly broad. In fact, it doesn't just cover journalists. It also covers people who are protesting on cases that are completely unrelated to the Karen Reid matter. There are other cases in that courthouse, and it's both civil and criminal. There are people showing up there who might be protesting the arrest of an illegal immigrant, for example. People who might be protesting a civil matter involving a bank, or people who are leafletting in front of the courthouse. Because as one of the cases that I cite in my brief, or at least made Mr. Randazzo's brief, the public square, sidewalks, and public streets are the only places, or one of the few places, that a speaker can be guaranteed to meet with people who don't automatically agree with them. They are trying to reach an influence. And if you're running a protest, let's say someone's protesting to get rid of a tax, or in favor of returning the death penalty, or in favor of increased gun laws, one of the places that they would traditionally protest or leaflet would be in front of the courthouse. Let me ask you this. The trial judge at least spoke quite a bit about noise interfering with the conduct in the courtroom, and so that was one of the reasons she gave for this buffer zone. And I think you are right that if you were protesting for some other reason not related to the Reid trial, it would fall within her order. If we move to the fact that if there is a problem here, it may be that balancing of the interests, of the significant government interest, and then whether the burden is, the court, the injunction shouldn't place more burden on a speech than necessary. What do you see the problem with this order? Is it the any demonstration or is it the 200 feet? It's both, Your Honor. Any demonstration obviously is clearly overbroad because it affects everybody in front of the courthouse who even the police can conceivably think is demonstrating. Again, that's Chicago v. Morales, we cite to that. There's just too little notice to the public about what constitutes a demonstration. The distance, of course, is as well. 200 feet. I will point out the Coakley case, that was a 300-foot order in an abortion case where it was clear that what the protest was there for was the only thing the abortion clinic is there for, and yet the judge said that's far too broad for this situation. Where would you suggest we draw the line here? Your Honor, given that this is a quintessential public forum, at least the sidewalks and the public street in front of the courthouse, and any sidewalks around the courthouse that are not, as in Coquinda. In Coquinda, there was a situation where the sidewalk was specific. There were specific findings made on record that said this specific sidewalk is not a public sidewalk. It's for the post office use for post office business, but if there's not a finding of that, the quintessential public forum doctrine states that strict scrutiny must apply, and therefore, the sidewalks and the public street should not, this order should not have extended to them, extended to the courthouse property. But unless there's more of a fact finding that says, look, this is getting, you know, there are people being threatened. We've had people arrested. The judge does not cite a single arrest for a noise ordinance violation. Again, there are noise ordinance violations that the police can enforce. There are obviously protections they can have if people are threatening. None of that is cited in the record. I think your answer is you object to any buffer zone on any sidewalk? On these facts, Your Honor, if there are more specific facts. And you will also object to 200 feet? 200 feet, yes. I'm sorry, I think Booz is an example of a case where 500 feet from an embassy. Location matters for a protest. You don't go to a place to protest simply because it's there. You go for a specific reason. Martin Luther King gave a speech at the Lincoln Memorial for a reason. People protesting at the Washington's for a reason. So I would I would point that. And so the fact that they are protesting at the courthouse to be pushed away, that's just something that Justice Hugo Black and Justice Owen Roberts in the past would have strongly objected to. And I see that I'm over my time. Thank you. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the Appellee Trial Court of Massachusetts please introduce himself on the record to begin? Good afternoon. Assistant Attorney General John Hitt for the state defendants in this case. We've asked that this court affirm the dial of the plenary injunction by the U.S. District Court in this case. This case has been very well briefed, I believe, on kind of short notice. So I'm not going to reiterate all of the arguments that we set forth set forth in our brief. I did want to turn to a couple of particular questions that were just asked by the court. In particular, there was a question about the sidewalk cases and how this case is different than the other sidewalk cases. The various sidewalk cases that are cited in the briefs, in particular Grace, which relates to the U.S. Supreme Court, and there's an additional D.C. Circuit case, the Hodge case that's cited in our brief, deal with the sidewalks around the U.S. Supreme Court or a court of appeals, which is a vastly different situation than is being faced here, where there is an ongoing trial in the courthouse. And the issue is the juxtaposition of a Sixth Amendment right to a fair trial by an impartial jury and how that should be balanced against the long line of cases indicating that public sidewalks have special First Amendment protection. Here, based on, again, as the brief sets forth, so I'm not going to repeat what's in the brief, but as the trial court judge was very familiar with based on the experience in the first trial, the buffer zone that was originally in place did not deal adequately with the west side of the courthouse, and so she slightly extended the buffer zone out to cover these additional streets where noise was being heard into the courthouse or else other forms of demonstration were taking place that were causing noise to be generated by vehicles or passersby that could be heard in the courtroom or could be heard by the jury. So on the noise issue, the record is very clear, and again, it's a very limited record here since we're just here on the preliminary injunction record. I do want to note that there were several references just now from amici counsel to factual issues that are not in the record of this case. So this issue of an arrest of a journalist is, I believe, the subject of an entirely separate case, which is not currently before the court. But the paucity of facts in the record here, I'm not sure that cuts in your favor. The government, as I understand it, went to the court and proposed this buffer zone, but it didn't then put in a full set of facts into the record that would show why it's consistent with narrow tailoring and other obligations or other common sense that one would take into consideration. So, Your Honor, what we have in the record is the motion package of the Commonwealth, which includes the two affidavits, one from a state trooper and then also an affidavit from a juror from the first criminal case that set forth the kind of factual problems that the judge herself was encountering as the same judge who heard the first trial and sat through and had her own experience in the courtroom. Her decision relating to this buffer zone is short. It's three pages long. But it covers the facts. She sets forth the facts that she is concerned about. It serves as a basis for her to believe that her order is narrowly tailored. In that three-page decision, she also incorporates her decision from her first buffer zone order in the first case. So why is the sidewalk, the public sidewalk in front of the courthouse, why can't people be allowed to gather there if they don't impede egress to and from the courthouse and they are within the noise ordinance? Sure, Your Honor. So here, the record indicated in the court references the fact that noise could be heard inside the courtroom where the trial was taking place and that she was specifically concerned about... Noise from the front sidewalk? Noise, I believe her courtroom sits on a corner where... Within the noise ordinance? I'm sorry, Your Honor. I didn't hear your question. Did the record then show that compliance with the noise ordinance wouldn't be sufficient to ameliorate that problem? Your Honor, she indicates in her decision that based on the experience from the first trial, that the buffer zone she had put in place, which was just 200 feet around the courthouse, was not sufficient to keep noise from reaching into the courtroom and disrupting procedures inside the courtroom during the trial. So she expands the buffer zone out to the west. So it covers both what you're referring to as the front of the courthouse, which I believe is Court Street, which runs between the probate court and the superior courthouse, so that's the front. And then just to the west side of that is where her courtroom sits on the corner. So noise comes from both the direction of Court Street... I see generalized findings of noise being a problem, but I don't see a finding that allowing people to gather on the front sidewalk as long as they don't impede people going to and from the building and as long as they stay within the noise ordinance is a problem. I don't find any finding to that effect. She makes reference, Your Honor, to the fact that some of the demonstrators were either holding signs relating to issues that were at evidence in the trial or relating to witnesses who were going to be testifying in the trial. So in addition to just the noise, there's also the secondary concern that she does discuss, though it's brief, that she does discuss concerning allowing people to be closer to the courthouse. So physically, the way things are set up around the Dedham Courthouse, and it's in the record, there's a photograph that you can look down at and kind of get your orientation of the courthouse. The front street, Court Street, the buffer zone actually extended past Court Street over past the probate court on the far side of Court Street and into a parking lot that was on the back side of that courthouse. Now the buffer zone presumably worked there because you have the probate courthouse across the street that acts as a sound barrier for the protesters that were beyond the probate courthouse and in the parking lot there. When she issues this second buffer zone order, and she's dealing with the issue just to the west of the courthouse, she had in fact tried a narrower zone to the west side of the courthouse, but given the openness of the space that exists on Ames Street and to the west, noise was able to penetrate into her courtroom. So that's why she, on the west side of the courthouse, extends the buffer zone slightly further to these streets to try and minimize as much as possible the impact of noise on proceedings inside the courtroom. If there were demonstrators on the sidewalks around the courthouse, the jurors, I take it, have to go in and out of the courthouse through the doors out onto the sidewalks. Your Honor, the only reference in the record relating to the jurors is that the jurors in the first trial assembled at a remote, apparently secure, some site far away from the courthouse and were bused into the courthouse. The record is unclear. Once they get bused into the courthouse, they have to go into the courthouse somehow. Yes, Your Honor. But the record is not clear where they're being dropped off. No, there are four different doors to the courthouse, but there's no garage the way there is here. So it kind of stands to reason that the bus pulls up, demonstrators go to where the bus is, and the jurors have to walk through the demonstrators to get to the courthouse. Yes, Your Honor, there would be a fair inference. And again here, the factual record is thin simply because we were on what was originally a temporary restraining order record that turned into a preliminary injunction. So the record is what the record is. I think the court is able to read the facts that were referenced by the judge. Well, that's an interesting point because we're here just on denial of a PI. It doesn't mean the case goes away if we affirm, and it does mean there could be further pursuit of some of these issues. I have to tell you I'm sort of concerned if the state police are, you know, arresting journalists on the sidewalks. And I don't know if they're citing the buffer zone or not, but the order doesn't seem to preclude journalists or members of the public from being on the sidewalk. I understand your concern. Those aren't the facts in the record of this case. Yes, but it's possible they could be developed. And it was argued to us that the word demonstrate is vague here. I'm sorry, Your Honor? It was argued before us that the word demonstrate in the order is vague, too vague, such that it might be arbitrarily enforced. Sure, Your Honor. However, this is a situation where the same word demonstration was in the first buffer zone that was reviewed by the Massachusetts Supreme Judicial Court in the first case. And to the extent that there is reference in the record to enforcement of the first buffer zone order, it relates to honking of trucks or air horns from large commercial vehicles seem to have been the issue of enforcement. And I think there's reference in the record to 12 citations being issued to truck drivers for honking horns. This case has moved quite fast, obviously. Have you had an opportunity to sit down with Mr. Randazza and see if there's a common area in terms of an order that would work? We have not, Your Honor. And given that there's an ongoing criminal trial in state court, there is a concern about, obviously, the court is very busy in terms of dealing with the criminal trial before here. And plus here, on this record, plaintiffs have never attempted to petition the court in any way to raise their concerns either with the Superior Court judge or with the single justice of the SJC, which would be an open avenue. It just hasn't taken place here. And that does touch on the due process case. Yeah, well, it's a little bit odd to have all of these concerns floated in the federal court as opposed to being brought to the attention of the state court judge or, if you will, the single justice. And perhaps something could be worked out on remand, including more conversations among counsel. Thank you, Your Honor. If there are no further questions, I'm going to rest on our brief, but I'm happy to ask or answer any additional questions you may have. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself on the record? He has a three-minute rebuttal. Thank you. Mark Randolph for the appellant. I'd just like to correct a couple of factual problems here. We do have in the record at AA61 and AA64 a description of problems that journalists and other citizens have faced. This has been interpreted to not only to mean that the demonstration even includes a man walking through with simply a sticker on his shirt where Officer Hardman assaulted him and tore it off of him and said, that's got to go. That is actually in the record. I'm sorry. So it wasn't that he was a journalist. It was that he was wearing something intended to influence somebody? No, there's also one where Mr. DeRosier, who is also subject to a different lawsuit, but his experience is also in there, where he was told he couldn't be in that area. Was he also wearing some sort of insignia? No, he was only recording. And then a Mr. Bowden Winn. We referenced this at page 11 of our brief at footnote three. Granted, it's only a news article, but it does describe Mr. Winn's being essentially attacked by Officer Hardman or simply recording no insignia, no nothing. So the way that this has been applied, at the very least, needs to be curtailed, at least as to the Mass State Police. I will note that the Dedham Police are only here for completeness of injunctive relief. I have no complaints with their conduct thus far. If we look at what he holds the court is trying to deal with, it's just noise. She could move the court. No, it isn't just noise, counsel. We don't have anything here that suggests. So there's this talk about whether the bus comes in, the jurors come out, and then they have to go through protesters. Well, there's no evidence of that at all. That hasn't happened. But would not a more narrowly tailored, if they had considered something more narrowly, a buffer zone around the bus? Nobody would be complaining. I mean, I would still say as a matter of academic exercise, I don't know if the judge can do that out there. I don't know if there was due process. But I also am not going to bring a hair-trigger case on something like that. My clients would waive. I'm waiving any right to have any argument that a short buffer zone around the juror bus would be a problem. I think we can all compromise on that. If there are intimidations. This goes a little bit to what Judge Chiato was asking your colleague, which is have you sat. It does seem that there's a lot up in the air here and there's much that could be worked out. If Judge Canone would have allowed us to intervene, we couldn't. If Judge Canone would have wanted to hear from us, that might have been different. Judge Canone could have thrown an invitation out the window at my clients, and they could have at least seen it and been there to answer. Yes. But I don't think that that court was interested at all in this. They weren't interested. She wasn't interested in alternative views and wasn't interested in limiting it. We suggested, I mean, I will say in the first case, the client, the protesters in that case, suggested a laundry list of narrow tailoring that was less than simply a 200-foot cone of silence over the area. And I don't want to misspeak saying silence. We are also, we have conceded. We'll be silent. Stay away from jurors. Intimidation, 268.13a and b, do the job. If you were a neighbor and you were bothered by noise, you would call up the local authorities and say, hey, somebody's bothering me. There's a loud party. Well, the judge has that authority, too. So if we take the patchwork of existing ordinances and laws and we look at it the way that Judge Lynch, that you did in your write-out decision, and we see in the ballot selfie case, there's all these laws that if we draw them around, they cover up all the evil that we're worried about. Thank you. The only thing left is protest. Thank you. Thank you. Thank you, counsel. That concludes argument in this case.